MINERAL AREA OSTEOPATHIC HOSPITAL, INC., d*b*a Mineral Area Regional Medical Center; Community Memorial Healthcare, Inc.; and North Country Hospital, Inc.; Plaintiffs,

v.

KEANE, INC., Defendant.

No. C99–50 MJM.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

May 25, 2000.

Roger T. Stetson, Michael R. Reck, Belin, Lamson, McCormick, Zumbach, Flynn, Seventh & Walnut, Des Moines, IA, Michael C. Spencer, Israel Dahan, Robert A. Wallner, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York City, for plaintiffs.

Scott E. McLeod, Lynch, Dallas, Smith & Harman, Cedar Rapids, Iowa, Peter J. MacDonald, Gabrielle R. Wolohojian, Hale & Dorr, LLP, Boston, MA, for defendants.

**590**

## OPINION AND ORDER

MELLOY, District Judge.

This case originated out of an alleged Year 2000 ("Y2K") defect in software ("MED-NET") that the plaintiffs in the above captioned case purchased from the defendant in this action, Keane, Inc.[1] After the defendant informed the plaintiffs it was canceling the technical support for MEDNET, the plaintiffs filed the present lawsuit alleging the defendant's refusal to repair said defect was a breach of contract. The plaintiffs now move for class certification.

On July 20, 1999, the Y2K Act, 15 U.S.C. § 6601 et seq., was signed into law. Congress intended the passage of the Y2K Act "to assure that the year 2000 problems described in this section do not unnecessarily disrupt interstate commerce or create unnecessary caseloads in Federal courts and to provide initiatives to help businesses prepare and be in a position to withstand the potentially devastating economic impact of such problems." 15 U.S.C. § 6601(a)(4). To achieve this goal, the Y2K Act puts in place procedural mechanisms designed to curb "insubstantial" litigation and "encourage private and public parties alike to resolve disputes .... by alternative dispute mechanisms in order to avoid costly and time-consuming litigation...." 15 U.S.C. §§ 6601(b)(3) and (4). For example, with regards to class certification, in addition to meeting the requirements of Federal Rule Civil of Procedure 23, the Y2K Act requires that the class be at least 100 in number. *See* 15 U.S.C. § 6614(c)(2)(D). In the present action, the plaintiffs' putative class numbers, at most, 81,[2] which is insufficient to meet the class prerequisites of the Y2K Act. Consequently, the initial issue for the Court to address is whether the Y2K Act applies to the plaintiffs' cause of action, thereby barring class certification.

When interpreting a statute, the court must begin with the plain language of the statute. *See Norwest Bank v. Doth,* 159 F.3d 328, 333 (8th Cir.1998). If the plain language of the statute is unambiguous, that language is the end of the inquiry "absent clear legislative intent to the contrary." *Id.* In other words, "if the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." *Id.* If, however, there is ambiguity in the language of a statute, the court must consider "the purpose, the subject matter and the condition of affairs which led to its enactment." *United States v. S.A.,* 129 F.3d 995, 998 (8th Cir. 1997), *cert. denied,* 523 U.S. 1011, 118 S.Ct. 1200, 140 L.Ed.2d 329 (1998); *quoting Lambur v. Yates,* 148 F.2d 137, 139 (8th Cir.1945). "When the meaning of a statute is questionable, it should be given a sensible construction and construed to effectuate the underlying purposes of the law." *Norwest Bank,* 159 F.3d at 333.

With that framework in mind, the Court begins its interpretation of the Y2K Act with its plain language. The Y2K Act is a jurisdictional statute that "applies to any Y2K action brought after January 1, 1999." 15 U.S.C. § 6603(a).[3] By defining "any Y2K action" as "a civil action commenced in any Federal or State court, or an agency board of contract appeal proceeding, in which the plaintiff's alleged harm or injury arises from or is related to an actual or potential Y2K failure, or a claim or defense arises from or is related to an actual or potential Y2K failure," Congress sets out the scope of the Act. 15 U.S.C. § 6602(1)(A). The scope of the Act, "to any Y2K action," is restated in multiple sections, including that on class actions. *See* 15. U.S.C. §§ 6602(1)(A), 6603(a), and 6614(c)(1). The plaintiffs in the present action seek relief in this Court for a computer defect that "concerns the inability of the MEDNET system to recognize and handle dates after December 31, 1999 .... common-

---

1. The defendant points out that the plaintiffs actually purchased MEDNET from Source Data Systems ("SDS"). Keane explains it acquired SDS in November 1995, and in so doing, acquired the rights to MEDNET.

2. In fact, 81 members is a generous estimate given many said members signed a release of

claims, and other said members indicated they are not inclined to participate in the lawsuit.

3. No new cause of action was created by the Act. *See* 15 U.S.C. § 6603(b); *Johnson v. Circuit City Stores, Inc.,* 71 F.Supp.2d 1026, 1029 (N.D.Ca. 1999).

ly known as a 'Year 2000' or 'Y2K' defect." (Doc. # 1) As such, the plaintiffs' Y2K action falls squarely within the plain language of the statute.

The plaintiffs, however, maintain that because the Y2K Act is a jurisdictional statute the class action requirements need only be met if one uses the Act as a jurisdictional vehicle to federal court. Because the plaintiffs have diversity jurisdiction, pursuant to 28 U.S.C. § 1332, they contend the class action requirements of the Y2K Act are inapplicable to this case. The plaintiffs base this contention on the language of § 6614(c)(3)(A) and its legislative history. Section 6614(c)(3)(A) reads:

A United States district court shall dismiss, or, if after removal, strike the class allegations and remand, any Y2K action brought or removed under this subsection as a class action if—

(i) the action is subject to the jurisdiction of the court solely under this subsection; and

(ii) the court determines the action may not proceed as a class action based on a failure to satisfy the conditions of Rule 23 of the Federal Rules of Civil Procedure.

The plaintiffs place great weight on the language "solely under this subsection," arguing this phrase indicates Congress envisioned other routes of jurisdiction for Y2K actions. The plaintiffs claim the legislative history of this section supports their proposition that Congress intended to expand jurisdiction with this statute rather than limit it. The relevant legislative history reads: "[This section] expands original jurisdiction of U.S. District Courts for Y2K actions where there is minimal diversity, but provides that district courts may abstain from hearing a case if there is a predominant State interest .... or where the amount is minimal, the class is small, or the primary defendants are States or other entities against whom the district court may not order relief." Sen.Rep. No. 106–10, at 7 (1999).

The plaintiffs are correct that the legislative history of § 6614 indicates that Congress intended to expand jurisdiction for Y2K actions, at least in some cases, when there is minimal diversity. Yet, what the legislative history also indicates is that courts may dismiss those cases with minimal diversity if "the class is small"—defined by the Act as a class with 100 members or less. *See* Sen. Rep. No. 106–10, at 7 (1999); *See also* §§ 6614(c)(2)(D) and 6614(c)(3)(A).

In any event, the determination of whether the Y2K Act expands jurisdiction is not central to the present dispute because the defendant does not challenge the plaintiffs' motion on jurisdictional grounds. The issue before the Court is whether the Act, and concomitantly the class action requirements, apply to the plaintiffs' cause of action. As discussed earlier, the plaintiffs' Y2K action fits neatly within the defined scope of the Act. *See* 15 U.S.C. § 6602(1)(A).

The plaintiffs, nonetheless, find the expanding jurisdiction element of § 6614 supports their position that one must "invoke" the jurisdiction of the Act for its procedural requirements to apply. Section 6614 of the Act simply explains that where a plaintiff has jurisdiction to be in federal court through this Act alone, a plaintiff's failure to meet the class action requirements of the Act is cause for dismissal. *See* 15 U.S.C. § 6614(c)(3)(A)(i). The Court recognizes that the plaintiffs are in federal court pursuant to diversity jurisdiction and are not implicated by this subsection. That does not, however, mean that other procedural requirements of the Act do not apply to the plaintiffs' Y2K action.

Indeed, to accept the plaintiffs' argument and take it to its natural conclusion would allow many plaintiffs to circumvent the Y2K Act altogether; that is, if one can establish some other form of federal jurisdiction, according to the plaintiffs' logic, they need not respect the requirements of the Act. This argument is contrary to achieving the stated purposes of the Y2K Act, which are to limit litigation and encourage other forms of dispute resolution. *See* Sen.Rep. No. 106–10, at 3 (1999) ("The primary purposes of the bill are to ensure that the problems associated with the two-digit date code used in computer programming which impedes recognition of the year 2000 .... do not result in undue

strain on the national economy or the nation's judicial system."); 15 U.S.C. § 6601(b)(4) (stating "to lessen burdens of interstate commerce by discouraging insubstantial lawsuits while preserving the ability of individuals and businesses that have suffered real injury to obtain complete relief."); 15 U.S.C. § 6601(b)(3), (stating purpose is to encourage parties to use other forms of dispute resolution). This purpose was based, in part, on Congress' finding that "there is a substantial likelihood that actual or potential year 2000 failures will prompt a significant volume of litigation, much of it insubstantial." 15 U.S.C. § 6601(a)(3)(A). To allow parties to avoid the procedural requirements designed to achieve these goals because they did not "invoke" the Act for jurisdictional purposes, as the plaintiffs suggest, would clearly frustrate such goals. Furthermore, the expansive jurisdiction element of § 6614 is not inapposite to this conclusion. Section 6614 allows Y2K actions, not otherwise admitted in federal court, to be governed by the procedural mechanisms limiting litigation and encouraging alternative dispute resolution. Indeed, it seems apparent that Congress could not achieve its stated goals of limiting litigation and encouraging other means of dispute resolution if the Y2K Act only applied to those parties who "invoked" it.

In sum, the Court finds the Y2K Act applies to the plaintiffs' Y2K action because it falls within the plain language of the Act, and application of the Y2K Act to the present action is consistent with the stated purposes of the Act. Therefore, because the plaintiffs fail to meet the numerosity requirement of the Y2K Act, their motion for class certification is denied.

### ORDER

For the reasons mentioned herein, the plaintiffs' motion for class certification is DENIED.